**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, and ANTHONY D. GULLUNI, in his official capacity as Hampden County District Attorney, <br><br> Defendants. | CIVIL ACTION <br> NO. 1:26-cv-10513 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

For over fifty-five years, Massachusetts has sought to protect citizens' privacy by prohibiting the willful, secret recording of oral communications. People for the Ethical Treatment of Animals, Inc. ("Plaintiff") challenges this statute under the First Amendment, claiming the statute impermissibly infringes on its purported plans to secretly record conversations with employees in private workplaces on private property as part of its investigations into animal welfare. The complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for at least two independent reasons.

First, this Court lacks subject-matter jurisdiction to hear this case because Plaintiff fails to establish standing. The complaint contains just one sentence about the alleged injury that is the basis for this action, a vague reference to a "facility" that Plaintiff would like to investigate in Hampden County, Massachusetts. Without any information whatsoever as to the basis for, nature

1

of, or details about the alleged planned investigation, Plaintiff's alleged injury is speculative and hypothetical, rendering this case unsuitable for adjudication.

Second, Plaintiff's claims are not ripe.  A First Amendment challenge should be dismissed as unripe where the relief sought exceeds the purported scope of intended activity.  A judicial opinion in these circumstances would constitute a constitutionally impermissible "advisory opinion."  Plaintiff allegedly plans, at some unspecified time in the future, to make secret recordings about animal mistreatment in private workplaces, yet asks this Court to rule that the statute is unconstitutional as applied to *any* matter of "public concern."  Plaintiff's second claim focuses on its own activity but is also unripe for adjudication due to the complaint's vague, nondescript, and uncertain description of Plaintiff's planned future activity.

In short, any opinion in this case would constitute an impermissible advisory opinion focused on exactly one sentence of description about the activity Plaintiff claims is "chilled" under Massachusetts law.  The complaint should be dismissed.

## BACKGROUND

### I.    Massachusetts General Laws Chapter 272, Section 99

Massachusetts General Laws Chapter 272, Section 99 ("Section 99"), in part, makes it a crime to "willfully" and "secretly" record with an "intercepting device" any "oral communication."  Mass. Gen. Laws. ch. 272, § 99(A), (B)(3)–(4), (C)(1); s*ee Berge v. Sch. Comm. of Gloucester*, 107 F.4th 33, 36 (1st Cir. 2024).  A recording is made "secretly" under Section 99 when it is made without the "actual knowledge" of the person being recorded— affirmative consent or permission is not required.  *Commonwealth v. Jackson*, 370 Mass. 502, 349 N.E.2d 337, 340 (1976); *Commonwealth v. Du*, 103 Mass. App. Ct. 469, 219 N.E.3d 843, 853 (2023), *aff'd*, 495 Mass. 103, 245 N.E.3d 1046 (2024).  Disclosure of content obtained in violation of Section 99 is also prohibited.  Mass. Gen. Laws. ch. 272, § 99(C)(3).  None of Section 99's

2

limited exceptions to the prohibition against secret recordings are relevant to this case, as the exceptions primarily focus on authorized recording by law enforcement or for routine business activities. *Id*. § 99(D).

First enacted in 1920, Section 99 in its current form has been the law of Massachusetts since 1968, with only minor, nonconsequential amendments since then. *See Commonwealth v. Tavares*, 459 Mass. 289, 945 N.E. 2d 329, 333–335 (2011). In enacting Section 99, the Legislature aimed to address two "grave dangers": (1) "the increasing activities of organized crime" and (2) "the uncontrolled development and unrestricted use of modern electronic surveillance devices," which the Legislature perceived as a danger "to the privacy of all citizens." Mass. Gen. Laws. ch. 272, § 99(A).

Although Plaintiff focuses on just subsection (C)(1) of Section 99, Complaint ¶ 3, the statute covers a wide array of wiretapping activity, including restrictions on law enforcement's use of surveillance. Indeed, Section 99 is "among the most protective of electronic surveillance statutes in the country" and imposes "a strong bulwark against secret surveillance by law enforcement in this Commonwealth." *Du*, 219 N.E.3d at 856.

## II.     Facts Alleged in Complaint[1]

Plaintiff is a national nonprofit "animal rights organization" with a "long history of conducting undercover investigations to expose cruelty to animals." Compl. ¶¶ 14, 17. Plaintiff's investigations typically involve an undercover associate obtaining employment at a facility that is under suspicion. *Id*. ¶ 19. These individuals use their "real names" and act as "model employees" while surreptitiously gathering information "from public and non-public areas regarding the facilities' treatment of animals." *Id*. ¶ 20.

---

[1] At the motion to dismiss stage, the court must accept all factual assertions made in a complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If an "investigator" observes purported violations of state or federal laws and regulations pertaining to animal welfare at the facility, the "investigator" will "begin lawfully recording that conduct" and may also record "conversations with facility employees and supervisors concerning relevant animal treatment practices." Compl. ¶ 20. After an investigation concludes, Plaintiff will typically present "evidence of any illegal conduct" to the proper authorities and "release[] evidence of any unlawful treatment of animals to the public through news articles, blog posts, videos, and press releases." *Id*.

According to Plaintiff, the "ability to secretly capture audio recordings is core to the efficacy of its undercover investigations" for three reasons. Compl. ¶ 29. First, "investigators" who openly record unlawful conduct may face threats or retaliation. *Id*. ¶¶ 30–34. Second, employees engaging in unlawful mistreatment of animals may not openly discuss their actions if they are aware that they are being recorded, undermining Plaintiff's ability to gather evidence to hold individuals and organizations liable for violating animal welfare laws. *Id*. ¶¶ 35–40. Third, Plaintiff alleges that audio recordings of animals in distress can provide important evidence of wrongdoing and openly obtaining these recordings may not be possible or risks jeopardizing the investigation. *Id*. ¶ 41–47.

Plaintiff claims only that it is "prepared and imminently intends to surreptitiously capture audio recordings during undercover investigations" in Massachusetts, asserting that it "plans" to investigate "a facility located in Hampden County," but without any further details about the basis for suspicion of wrongdoing, the nature of the investigation, or the type of facility, or what, if any, steps Plaintiff has taken toward this "plan." *Id*. This is the complaint's only reference to any planned investigation in Massachusetts. Plaintiff alleges that it reasonably fears prosecution under Section 99 and that, but for the risk of prosecution, it would "authorize its "investigators" to create

4

undercover audio recordings of conversations and animal sounds at this facility, as well as other Massachusetts workplaces" where animals are used, bred, or sold. *Id*. ¶¶ 56–60.

The complaint contains two causes of action for declaratory and injunctive relief under the First Amendment, pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 2201. Compl. ¶ 1. In the first cause of action, Plaintiff asserts that the "First Amendment protects one's right to create audio recordings on matters of public concern." *Id*. ¶ 63. Plaintiff asks this Court to declare that Section 99 is facially unconstitutional and issue an injunction to prevent Defendants from enforcing *any* provision of Section 99. *Id*. ¶ 66. The second cause of action asserts that the "First Amendment protects [Plaintiff's] right to create audiovisual recordings documenting animal mistreatment in nonpublic spaces of workplaces." *Id*. ¶ 70. Plaintiff asks for a declaratory ruling and injunction to ensure that Section 99 "cannot be enforced against [Plaintiff] concerning [its] investigative and newsgathering activity." *Id*. ¶ 72. The complaint's "Prayer for Relief" section also seeks a declaration that Section 99 is facially unconstitutional under the Fourteenth Amendment, although this is the only place in the complaint where Plaintiff mentions this argument. *Id*. at 22 ¶ 1.

## ARGUMENT

Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases or controversies. *See, e.g., Penobscot Nation v. Frey*, 3 F.4th 484, 508 (1st Cir. 2021). "The doctrines of standing and ripeness 'originate' from [this] same Article III limitation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014). Standing and ripeness are threshold jurisdictional issues, and it is the plaintiff's burden to show satisfaction of Article III's justiciability requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Reddy v. Foster*, 845 F.3d 493, 499-501 (1st Cir. 2017).

5

Here, Plaintiff lacks standing and presents unripe claims.  The complaint is bereft of any details about the alleged planned activity restricted by Section 99.  Scattered references to a jumble of prior investigations in other states do not meet Plaintiff's burden to adequately plead an imminent, nonspeculative injury in Massachusetts.  As to ripeness, Plaintiff seeks relief that goes far beyond what could conceivably be necessary to adjudicate this case.  Plaintiff effectively asks this Court to produce an impermissible advisory opinion aimed at an ambiguous, nondescript array of speculative activity.  For these reasons, the complaint should be dismissed.  *See* Fed. R. Civ. P. 12(b)(1).

## I.    Plaintiff Lacks Standing because Its Injury is Speculative.

To establish standing, a plaintiff must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.  At the pleading stage, "the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

In a pre-enforcement action, an allegation of future injury will suffice to show an injury in fact only if the injury is "certainly impending or if there is a substantial risk that harm will occur." *Reddy*, 845 F.3d at 500 (emphasis in the original).  If, however, a future injury is "'too speculative for Article III purposes and no prosecution is even close to impending,' then there is no standing to sue." *Id*. (quoting *Blum v. Holder*, 744 F.3d 790, 799 (1st Cir. 2014)).  The mere intent to engage in possibly unlawful conduct does not confer an injury in fact where the plaintiff fails to provide "any description of concrete plans" or "any specification of *when* the some day [plans] will be." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (emphasis in original).

Here, Plaintiff's alleged future injury is completely hypothetical.  *See, e.g., Sutliffe v. Epping Sch. Dist.*, 584 F.3d 314, 326 (1st Cir. 2009) (plaintiffs who professed desire to engage in

proscribed conduct did not have standing where plans lacked specificity).  Plaintiff asserts that it "is prepared and imminently intends to surreptitiously capture audio recordings during undercover investigations conducted in the Commonwealth of Massachusetts," but provides no further details about the state of its "plan" to investigate a "facility," including whether any investigators have been hired by the facility Plaintiff wishes to investigate or the basis for Plaintiff's belief that it will need to violate Section 99 during the course of its investigation in Hampden County.  Compl. ¶ 59.  Plaintiff cryptically states only that it "plans to investigate a facility located in Hampden County," *id*, and provides no information whatsoever about the timeline or imminency of the investigation; the type of facility to be investigated; the nature of the investigation; the basis for Plaintiff's belief that this facility should be investigated; or the person(s) who will carry out the investigation.

Nor do the complaint's examples of prior investigations shed any light.  Plaintiff identifies six prior investigations in other states that allegedly relied on recordings that would be prohibited under Section 99.  These investigations make up an incredibly broad array of targeted activity and workplaces, ranging from a scientific laboratory to a farm to a roadside zoo.  These various examples provide no further information about the alleged future injury Plaintiffs anticipate suffering *in Massachusetts*.  If anything, the examples of prior investigations only highlight the level of concrete planning and detail that typically go into Plaintiff's investigations, which shows how vague their alleged "plans" are in this case.

In short, the complaint contains a total dearth of information about the nature of Plaintiff's alleged injury.  There are no "clearly" alleged facts for this Court to examine to assess whether Plaintiff has met its burden to demonstrate that an injury in fact is either certainly impending or a substantial risk.  Plaintiff's speculative injury fails to establish standing.

**II.    Plaintiff's Claims Are Not Ripe.**

Plaintiff's claims are not ripe because it fails to sufficiently allege an injury that would allow this Court to adjudicate the dispute, and because the relief Plaintiff seeks is wildly disproportionate from the scope of alleged activities Plaintiff plans to undertake.

Federal courts "cannot issue advisory opinions." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 638, 646 (1st Cir. 2019). Just as the "standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries," the ripeness doctrine "seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy*, 845 F.3d at 500 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998). The ripeness requirement prevents courts from "premature adjudication" and "entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)).

In the context of a First Amendment pre-enforcement challenge, ripeness requires that "a party must have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity. This gives a precise shape to disobedience, posing a specific legal question fit for judicial review." *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 825 (1st Cir. 2020) (quoting *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999)).

Courts use a two-part test to determine ripeness. First, the issue must be "fit for review," an inquiry that typically examines "finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Project Veritas*, 982 F.3d at 825 (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995)). Second, the court queries "the extent to which hardship looms—an inquiry that typically

8

turns upon whether the challenged action creates a direct and immediate dilemma for the parties." *Id*.

Fitness for review is determined "by relating the level of present factual development to the character of the potentially controlling legal principles[.]" 13B Wright & Miller, Federal Practice & Procedure, § 3532.3 at 135 (3d ed. Supp. Apr. 2019). Where a claim turns on "legal issues not likely to be significantly affected by further factual development," that claim is more likely to be deemed ripe notwithstanding the absence of a developed factual record. *Ernst & Young*, 45 F.3d at 536. Conversely, where a claim turns on factual circumstances, an undeveloped record is likely to be fatal to jurisdiction, because it would require the court to "advis[e] what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *accord Ernst & Young*, 45 F.3d at 536, 538 (hypothetical cases "are seldom fit for federal judicial review" because adjudication on speculative facts is "at best difficult and often impossible").

In *Project Veritas*, the First Circuit applied these principles and held that ripeness was a jurisdictional bar to a First Amendment challenge to Section 99 due to a "disconnect between the alleged intended action and the requested relief." 982 F.3d at 842. In that case, the plaintiff was a "national media organization dedicated to undercover investigative journalism." *Id*. at 817. As relevant here, the plaintiff brought two as-applied First Amendment challenges to Section 99. The court rejected both claims.

First, the plaintiff argued that Section 99 violated the First Amendment as applied to secret recordings of "any person who does not have a reasonable expectation of privacy in what is recorded." *Id*. at 841. Evaluating this claim, the court held the claim was not ripe because the plaintiff's "vague yet sweeping definition" of a "reasonable expectation of privacy," meant that the "contours" of the plaintiff's challenge were not "sharply defined." *Id*. at 842. The court

rejected the plaintiff's "lack of precision" and refused to engage in "conjecture[]" as to whether "Section 99 will ever be applied in many of the distinct contexts to which [plaintiff's] challenge . . . extends." *Id*.

Second, the plaintiff claimed that Section 99 was unconstitutional as applied to secret recordings of "all government officials discharging their official duties in public spaces." *Id*. The plaintiff had identified its own "planned investigations" into specific government officials on specific issues. *Id*. at 843. The plaintiff sought relief, however, that would cover a much larger scope of activity than its planned investigations. *Id.* at 843. The court held that the "contrast between the narrowness of [plaintiff's] plans and the breadth of the remedy that it has requested . . . renders this dispute hypothetical and abstract rather than real and concrete," and rejected the claim as unripe. *Id*. at 843. The court's reasoning did not "turn on any skepticism that, but for Section 99, [the plaintiff] would engage in the investigations it describes itself as intending to undertake," but instead focused solely on the lack of congruence between the relief sought and the allegedly protected activity. *Id*. at 841.

The *Project Veritas* ripeness analysis squarely applies here to bar adjudication of Plaintiff's claims. As in that case, both of Plaintiff's claims contain a troubling disconnect between the scope of the activity Plaintiff allegedly intends to undertake and the relief Plaintiff seeks. It is difficult to ascertain the exact scope of Plaintiff's plans, given that the complaint is devoid of any specific details about planned investigations in Massachusetts. Plaintiff vaguely asserts that it would like to "create audiovisual recordings documenting animal mistreatment in nonpublic spaces of workplaces where animals are used for food production, clothing production, entertainment, experimentation, or bred or sold as companion animals." Compl. ¶ 71. Although the details are opaque, Plaintiff's alleged scope of intended activity has some discernable limited scope. Plaintiff focuses on secret recordings in "workplaces" that relate to perceived "animal mistreatment." *Id*.

10

Yet the relief Plaintiff seeks would open the floodgates on a wide variety of secret recordings under Section 99 across the full spectrum of locations and speakers with no clearly-defined limit on what constitutes a "matter of public concern."

Plaintiff's first claim seeks a declaration that Section 99 is unconstitutional insofar as it prohibits audio recordings "on matters of public concern."[2]  Such a ruling would hinge on an amorphous, broad concept in First Amendment jurisprudence.  As the First Circuit recently noted, what exactly constitutes speech on "matters of public concern" is a question that "remains a little fuzzy" but ostensibly includes "any matter of political, social, or other concern to the community." *Berge v. Sch. Comm. Of Gloucester*, 107 F.4th 33, 42 (1st Cir. 2024) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).  The sweeping definition of matters of public concern "fails to ensure that the contours of this challenge to Section 99 are sharply defined," a requirement for adjudication under the ripeness doctrine.  *Project Veritas*, 982 F.3d at 842 (internal citations omitted).

The judicial declaration Plaintiff seeks would be staggering in scope, and thus wildly incongruent with the far more limited scope of Plaintiff's "articulated set of planned investigations." *Project Veritas*, 982 F.3d at 841.  As the First Circuit cautioned, this type of incongruence "impermissibly seeks to transform our First Amendment inquiry from a necessary means of indicating a party's right not to be bound by a statute that is unconstitutional into a means of mounting gratuitous wholesale attacks upon state and federal laws." *Id*. at 841–842.  Plaintiff's claim is not ripe because the relief they seek far exceeds the scope of their purported activities.

---

[2] Plaintiff's first claim is styled as a facial challenge to Section 99, but in the same breath focuses on the statute's purportedly impermissible chill on "audio recordings on matters of public concern."  Compl. ¶ 65, 66.  As the First Circuit determined in confronting a similar claim in *Project Veritas*, this type of "half-fish, half-fowl First Amendment challenge[]" requires the plaintiff to "satisfy [the] standards for a facial challenge to the extent of that reach."  982 F.3d at 826 (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)).

Alternatively, Plaintiff seeks declaratory and injunctive relief based on Section 99's purported unconstitutionality as applied to Plaintiff's "planned investigative and newsgathering activities." Compl. ¶ 72. This claim is also not ripe, but for somewhat distinct reasons. The principal issue here is that Plaintiff has provided no information about their "planned investigative and newsgathering activities" in Massachusetts, much less specific details about the alleged audio recordings they would like to capture that would be prohibited under Section 99. Ripeness seeks to prevent courts from advising what the law would be on a "hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). Plaintiff's claim falls short of even "hypothetical" facts and asks this Court to issue an opinion about the application of Section 99 to Plaintiff's planned speech based on no facts at all. Such an opinion would veer sharply into impermissible territory under the ripeness doctrine.

## CONCLUSION

For the reasons described above, the defendants respectfully request that the Court dismiss the complaint, with prejudice.

Respectfully submitted,

ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts, and ANTHONY D. GULLUNI, in his official capacity as Hampden County District Attorney,

By their attorneys,

*/s/ Mikaila V. Smith*
Mikaila V. Smith, BBO No. 716293
Assistant Attorney General
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2022
Mikaila.Smith@mass.gov

12

*/s/ John Rockwell Hitt*
John R. Hitt, BBO No. 567235
Assistant Attorney General
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(510) 727-2200
John.Hitt@mass.gov

Dated: April 27, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system, with copies sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and that a paper copy will be mailed by first class mail, postage prepaid, to non-registered participants on April 27, 2026.

/s/ *John R. Hitt*
John R. Hitt
Assistant Attorney General

April 27, 2026

13